UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PRO PUBLICA, INC.<br>155 Avenue of the Americas, 13th Floor<br>New York, NY 10013<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>VETERANS AFFAIRS<br>810 Vermont Avenue NW<br>Washington, DC 20420<br><br>    Defendant. | Civil Action No. _____ |

## COMPLAINT

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., seeking the release of withheld records that generally concern communications between the United States Department of Veterans Affairs ("VA") and its consultant Alvin L. Young, Ph.D. ("Young") on issues related to the use of Agent Orange and other herbicides during the Vietnam War. Pro Publica, Inc.'s ("ProPublica") senior reporter Charles Ornstein, whose investigative work was previously recognized with a Pulitzer Prize for Public Service, sought these records under FOIA, but the VA has stonewalled and failed to disclose them. ProPublica seeks declaratory, injunctive, and other appropriate relief with respect to this unlawful withholding.

- 1 -

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). In addition, this Court has jurisdiction pursuant to the APA, 5 U.S.C. §§ 701-706. This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rules of Civil Procedure 57 and 65.

3. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) as the defendant is located in the District of Columbia and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

4. Plaintiff ProPublica is a Delaware corporation and a non-profit entity under Section 501(c)(3) of the Internal Revenue code. As an independent newsroom that produces investigative journalism in the public interest, ProPublica has been honored with three Pulitzer Prizes. On average, ProPublica's web site has more than 1,000,000 unique visitors per month. Since its publishing began in 2008, ProPublica's "publishing partners" have included more than 135 news outlets amounting to a "who's who" of the journalism world, including: the Atlantic, BBC, Boston Globe, Los Angeles Times, Miami Herald, New York Times, NPR News, Politico, USA Today, Virginian-Pilot [Norfolk], and the Washington Post.

5. Defendant United States Department of Veterans Affairs is a federal agency headquartered at 810 Vermont Avenue NW, Washington, DC 20420. VA has possession,

custody, and control over the records sought by plaintiff. VA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## NATURE OF THE ACTION

6. "Mixtures of 2,4-dichlorophenoxyacetic acid (2,4-D), 2,4,5-trichlorophen-oxyacetic acid (2,4,5-T), picloram, and cacodylic acid made up the bulk of the herbicides sprayed" by the U.S. military from 1962 to 1971 over Vietnam. *See* VETERANS AND AGENT ORANGE: UPDATE 2014, National Academies of Sciences, Engineering, and Medicine (2016), at 1. "The herbicide mixtures used were named according to the colors of identification bands painted on the storage drums; the main chemical mixture sprayed was Agent Orange, a 50:50 mixture of 2,4-D and 2,4,5-T. At the time of the spraying, 2,3,7,8-tetrachlorodibenzo-p-dioxin (TCDD), the most toxic form of dioxin, was an unintended contaminant generated during the production of 2,4,5-T and so was present in Agent Orange as well as some other formulations sprayed in Vietnam." *Id.*

7. It took an act of Congress—not the VA—to finally recognize the long-term health effects of such herbicides in Vietnam veterans. Pursuant to 38 U.S.C. § 1116(f), "a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent containing dioxin or 2,4-dichlorophenoxyacetic acid, and may be presumed to have been exposed during such service to any other chemical compound in an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service."

8. Federal law and VA regulations provide that certain diseases are "considered to have been incurred in or aggravated by" service in Vietnam. *See* 38 U.S.C. § 1116(a); 38 C.F.R. §§ 3.307(a)(6), 3.309(e), 3.313(b). Those diseases are either specifically identified in the statute *or* identified by the VA, at its discretion, as "having positive association with exposure to an herbicide agent." *Id.*

9. In exercising its discretionary authority to recognize certain diseases as linked to herbicides in Vietnam, the VA considers various views including those of its consultant, Young, who might be characterized as a naysayer. In 2013, for example, Young advised the VA that "[h]istorical records and environmental fate studies support the conclusion that our troops were never at a significant risk for exposure to Agent Orange." *See* https://www.propublica.org/documents/item/3145886-May-15-2013-email.html (email obtained through a FOIA request unrelated to the present dispute).

10. Young has a long history of working for the federal government and subsequently serving as a third-party consultant concerning Vietnam-era herbicides and exposures.

11. A wooden plaque, *circa* 1979, in the "Alvin L. Young Collection on Agent Orange"—part of the Special Collections of the National Agricultural Library of the United States Department of Agriculture—reads "**'Dr. Orange'** Major Alvin L. Young, The True Scientist." *See* https://specialcollections.nal.usda.gov/agentorange/agent-orange-item-id-6537 (emphasis added).

12. "Young had drawn the nickname [many decades ago] as an Air Force expert on herbicides used to destroy enemy-shielding jungle in Vietnam. Since then —

- 4 -

largely behind the scenes — the scientist, more than anyone else, has guided the stance of the military and U.S. Department of Veterans Affairs on Agent Orange and whether it has harmed service members." *See* Charles Ornstein & Mike Hixenbaugh, *Dr. Orange: The Secret Nemesis of Sick Vets*, PROPUBLICA and THE VIRGINIAN-PILOT (Oct. 26, 2016), available at https://www.propublica.org/article/alvin-young-agent-orange-va-military-benefits.

13.  But Young has his critics.  "'Most of the stuff [Young] talks about is in no way accurate,' said Linda S. Birnbaum, director of the National Institute of Environmental Health Sciences, part of the National Institutes of Health, and a prominent expert on dioxin.  'He's been paid a hell of a lot of money by the VA over the years, and I think they don't want to admit that maybe he [isn't] the end all and be all.'" *Id.*

14.  "Over the years, the VA has repeatedly cited Young's work to deny disability compensation to vets, saving the government millions of dollars." *Id.*

15.  All the while, Young has profited handsomely from the Agent Orange controversy.  "In recent years, Young, 74, has been a consultant for the Department of Defense and the VA, as well as an expert witness for the U.S. Department of Justice on matters related to dioxin exposure.  By his own estimate, he's been paid 'a few million' dollars over that time." *Id.*

16.  In 2012, the VA awarded Young "a $600,000 no-bid contract to write research reports on Agent Orange." *Id.*

17. Despite the government's reliance on Young, the interested public remains largely uninformed concerning his central role in (allegedly) debunking any attempt to link Agent Orange to the ailments of Vietnam-era veterans.

18. Only through transparency can the public have confidence in the VA's commitment "[t]o care for him who shall have borne the battle." The VA's integrity is called into question when it refuses to divulge the extent of its reliance upon a single individual—Young—whose research and conclusions concerning the long term health effects of Agent Orange and other herbicides on Vietnam veterans seemingly have had a profound impact on VA policy and regulations.

**PLAINTIFF'S FOIA REQUEST AND
DEFENDANT'S FAILURE TO COMPLY WITH FOIA**

19. By email dated May 31, 2016, ProPublica submitted a FOIA request to the VA ("FOIA Request")—sent to the Veterans Health Administration ("VHA")—in which it sought disclosure of correspondence, both electronic and written, between January 1, 2012 and present, between Young and the following VA officials (regardless of whether the correspondence involved the official directly or as a carbon copy ("cc") recipient):

- Thomas Murphy (Senior Executive Service ("SES")), director of compensation and pension;
- Allison Hickey;
- James Sampsel;
- Brad Flohr (SES EQV), VBAVACO;
- John Spinelli (SES);
- Lisa Thomas, Ph.D. (SES), VHACO;

- Janice Jacobs (SES), VBAVACO;
- Eric Shinseki, former Secretary;
- Robert McDonald, current Secretary;
- Dr. Terry Walters (SES), now retired;
- Dr. Ralph ("Loren") Erickson;
- Dr. David J. Shulkin, Under Secretary of Health;
- Carolyn M. Clancy, VA's former Interim Under Secretary for Health; and
- Dr. Robert Petzel, former Under Secretary of Health.

The FOIA Request also sought disclosure of the correspondence, including internal approval justifications, with respect to any contracts awarded to Young or his consulting firm A. L. Young Consulting, Inc., since January 1, 2010. *See* Exhibit 1.

20. ProPublica requested "expedited consideration" because the FOIA Request "relates to a matter of urgency." *Id.* The FOIA Request explained that "[t]he Institute of Medicine recently released its 2014 Agent Orange update related to possible presumptive conditions connected to herbicide exposure" and "Dr. Young has been an active advisor to the VA on matters relating to herbicide exposure." *Id.* In addition, the FOIA Request sought a waiver of FOIA processing fees. *Id.*

21. The VA's own FOIA regulation provides that a FOIA request "will be processed out of the order in which [it was] received . . . and given expedited treatment when VA determines that . . . [t]here is an urgency to inform the public concerning actual or alleged Federal government activity, if the request is made by a person primarily

engaged in disseminating information." 38 C.F.R. § 1.556(d)(1)(ii).  This provision is specifically meant to assist journalists who seek prompt disclosure of information for imminent publication.

22. By email and letter dated June 2, 2016, the VHA acknowledged receipt of the FOIA Request, assigned it tracking number 16-08181-F, and transferred portions of the request from VHA to the Office of the Secretary of Veterans Affairs ("OSVA") (under separate tracking number 16-08182-FF) and the Veterans Benefits Administration ("VBA") (under separate tracking number 16-08183-F). *See* Exhibit 2.  ProPublica's requests for expedited processing and a fee waiver also were granted by VHA. *Id.*

23. By email dated August 4, 2016, VBA informed ProPublica that "the request will take over 20 days to process" and that VBA "process[es] requests in the order that they are received." *See* Exhibit 3.  VBA did not acknowledge ProPublica's request for expedited processing let alone grant or deny that request. *Id.*

24. On August 4, 2016, ProPublica sent an email to VBA inquiring about the expected timing with respect to processing the FOIA Request. *Id.*  A first response email from VBA that same day indicated "there may be a delay ranging from 90 to 120 days." *Id.*  A second response email from VBA a short time later that day indicated that VBA's IT Office "estimate[d] that it will take up to 18 months to retrieve the data [ProPublica] requested." *Id.*

25. On August 5, 2016, ProPublica sent another email to VBA expressing concern about the VBA's processing time for the FOIA Request. *Id.*  In response, on August 7, 2016, VBA informed ProPublica by email that the FOIA Request was placed in

the "Exceptional/Voluminous track" and that VBA "process[es] requests in the order that they are received." *Id.*

26. On October 20, 2016—nearly five months after ProPublica's FOIA Request was submitted—VBA yet again informed ProPublica by email that "the request will take over 20 days to process" and that VBA "process[es] requests in the order that they are received, and, accordingly, must first complete work on requests that preceded [ProPublica's FOIA Request]." *See* Exhibit 4. ProPublica inquired by email that day whether VBA had "any sense of timing" as to when VBA's processing would occur, and VBA responded by email that day that "the time may expand longer than the projected 180 days." *Id.*

27. To date, no records have been produced by VBA in response to the FOIA Request.

28. By email dated September 15, 2016, VHA informed ProPublica that there would be a further "delay in processing" the FOIA Request due to problems experienced by VA's Office of Information and Technology ("OI&T" or "IT"). *See* Exhibit 5. VHA stated that "[d]ue to the date range of the requested records . . . it will take anywhere from 2-4 months for [] data migration to be completed and allow for the record search to begin." *Id.*

29. On September 15, 2016, ProPublica inquired by email with VHA about first reviewing a subset of the requested records, particularly those from "more recent time periods," so that at least some progress could be made with respect to processing the FOIA Request. *Id.* On September 16, 2016, VHA replied "[y]es" by email. *Id.*

ProPublica inquired with VHA by email again on October 11, 2016, and on October 12, 2016, VHA replied by email that it did *not* have "an estimated time" when it could review more recent records. *Id.* Again on October 25, 2016, ProPublica inquired by email to VHA about the status of processing the FOIA Request. *Id.* That same day, VHA responded by email that VHA still awaited "assistance of [VA's Office of General Counsel] and IT." *Id.*

30. To date, no records have been produced by VHA in response to the FOIA Request.

31. By letter and email dated July 15, 2016, OSVA provided a response to FOIA tracking number OSVA 16-08182-F. *See* Exhibit 6. With respect to Messrs. John Spinelli, Eric Shinseki, and Robert McDonald, OSVA "concluded that [it] is not in possession of records responsive to this portion of [ProPublica's] request." *Id.*

32. Despite the grant of ProPublica's request for expedited processing by VHA, and the passage of over six months since the FOIA Request was filed, ProPublica has not received any response determination in connection with the FOIA Request from VHA or VBA.

**FAILURE TO TIMELY MAKE<br>RESPONSE DETERMINATIONS UNDER *CREW***

33. "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester

that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013).

34. "If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies." *Id.* at 185.

35. The FOIA statute, 5 U.S.C. § 552(a)(6)(C)(i), also provides that "[a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of § 552(a)(6)."

36. VA has not sent ProPublica any response "determination" in connection with the FOIA Request within the relevant statutory time period.

### FIRST CAUSE OF ACTION:
**Violation of the Freedom of Information Act for Failure to Disclose Agency Records With Respect to the FOIA Request**

37. ProPublica repeats and re-alleges paragraphs 1-36 above.

38. ProPublica has a legal right under FOIA to obtain the agency records requested from defendant VA in the FOIA Request, and no legal basis exists for defendant's failure to make available the requested records.

39. With respect to the FOIA Request, defendant VA's wrongful withholding of agency records violates FOIA, 5 U.S.C. § 552(a)(3), as well as VA's regulations promulgated under FOIA.

40. ProPublica is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

**SECOND CAUSE OF ACTION:**
**Violations of the Freedom of Information Act and VA's FOIA Regulation**
**for Failure to Grant Expedited Processing With Respect to the FOIA Request**

41. ProPublica repeats and re-alleges paragraphs 1-40 above.

42. The FOIA statute requires that each agency shall "provid[e] for expedited processing of requests for records," *inter alia*, "in cases in which the person requesting the records demonstrates a compelling need."  5 U.S.C. § 552(a)(6)(E)(i)(I).

43. The FOIA statute defines a "compelling need" as meaning, *inter alia*, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

44. The VA's FOIA regulation provides that "[r]equests will be processed out of the order in which they were received by the component responsible for processing the FOIA request and given expedited treatment when VA determines that . . . [t]here is an urgency to inform the public concerning actual or alleged Federal government activity, if the request is made by a person primarily engaged in disseminating information."  38 C.F.R. § 1.556(d)(1)(ii).

45. The VA's FOIA regulation also provides that "[r]equests will be processed out of the order in which they were received by the component responsible for processing the FOIA request and given expedited treatment when VA determines that . . . [t]here is widespread and exceptional interest in which possible questions exist about the government's integrity which affect public confidence."  38 C.F.R. § 1.556(d)(1)(iv).

46. The FOIA statute further provides "that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I).

47. The VA's FOIA regulation further provides that "[w]ithin ten (10) calendar days of its receipt of a request for expedited processing, the FOIA Officer shall determine whether to grant the request and will provide the requester written notice of the decision." 38 C.F.R. § 1.556(d)(3).

48. There is urgency to inform the public concerning actual or alleged Federal government activity and ProPublica is a person primarily engaged in disseminating information entitled to expedited treatment, pursuant to 38 C.F.R. § 1.556(d)(1)(ii).

49. There is widespread and exceptional interest in the subject matter of the FOIA Request in which possible questions exist about the government's integrity which affect public confidence, pursuant to 38 C.F.R. § 1.556(d)(1)(iv).

50. Despite VHA's grant of expedited processing for the FOIA Request, VBA did not even acknowledge ProPublica's request for expedited processing let alone grant or deny that request.

51. VBA's failure to determine whether to grant ProPublica's request for expedited processing in the FOIA Request, and its failure to grant that request for expedited processing, violate FOIA as well as VA's regulations promulgated under FOIA.

52. ProPublica is entitled to declaratory and injunctive relief with respect to VBA's failure to act upon, and grant, the request for expedited processing in the FOIA Request.

### THIRD CAUSE OF ACTION:
**Violation of the Administrative Procedure Act for Failure to Timely Respond to Request for Agency Records With Respect to the FOIA Request**

53. ProPublica repeats and re-alleges paragraphs 1-52 above.

54. The failures of defendant VA to timely respond and actually provide expedited processing with respect to ProPublica's FOIA Request for agency records, and defendant VA's withholding of agency records, each constitute agency action unlawfully withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06. The failures of defendant VA to timely respond and actually provide expedited processing, and its withholdings, each are arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA.

55. ProPublica is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records in connection with the FOIA Request.

### REQUESTS FOR RELIEF

WHEREFORE, ProPublica requests that judgment be entered in its favor and against defendant, and that:

a) defendant and any of defendant's agents or other persons, departments, or components acting for, with, by, through or under them be ordered to conduct

an expedited and reasonable search for records responsive to ProPublica's request under FOIA;

b) defendant and any of defendant's agents or other persons, departments, or components acting for, with, by, through or under them be enjoined and restrained from continuing to withhold records relevant to ProPublica's request under FOIA and in violation of the APA;

c) the Court declare that the requested records are not exempt from disclosure under FOIA and order defendant to disclose the requested records in their entireties and make copies available to ProPublica;

d) the Court enter a judgment awarding ProPublica reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

e) the Court award all other such relief to ProPublica as this Court deems just, proper and equitable.

Dated: December 16, 2016              Respectfully submitted,

/s/ Seth A. Watkins
Seth A. Watkins (D.C. Bar # 467470)
   Email: watkins@adduci.com
ADDUCI, MASTRIANI & SCHAUMBERG LLP
1133 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 407-8647
Facsimile: (202) 466-2006

*Attorneys for Plaintiff Pro Publica, Inc.*